<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BANNER LIFE INSURANCE COMPANY,<br><br>        Plaintiff,<br><br>v.<br><br>KE SONG and JENNIFER VOLKER as Administrator of THE ESTATE OF RYAN ANTHONY VOLKER, Deceased,<br><br>        Defendants. | Civil Action No. 23-3171 (CCC) (JSA)<br><br><br><br><u>OPINION</u> |

**<u>JESSICA S. ALLEN, U.S.M.J.</u>**

This is an interpleader case to determine the beneficiary of a life insurance policy issued by Plaintiff, Banner Life Insurance Company ("Banner Life"). Before the Court is the motion of Defendant Jennifer Volker ("Volker"), as Administrator of the Estate of Ryan Anthony Volker ("the Estate"), for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c). (ECF Nos. 19, 22). Defendant Ke Song ("Song") opposes the motion. (ECF No. 20). The parties have consented to the Undersigned's jurisdiction to decide this dispositive motion. (ECF No. 24). No oral argument was heard. *See* Fed. R. Civ. P. 78(b). For the reasons set forth below, and for good cause shown, the Estate's motion is **DENIED**.

**I.    RELEVANT BACKGROUND AND PROCEDURAL HISTORY**[1]

On October 18, 2004, Banner Life issued Ryan Anthony Volker ("Ryan Volker" or "Decedent") life insurance policy number 17B797111 ("the Policy") with a face amount of

---

[1] This background is drawn from the Complaint, briefs, and the parties' answers, crossclaims, and respective answers to crossclaims. (ECF Nos. 1, 10, 13, 15-16, 19-20 & 22).

$300,000.  (Compl., ¶ 7; ECF No. 1).  Song was married to Ryan Volker and was designated as the sole beneficiary of the Policy.  (*Id.*, ¶ 8; *see also* Policy, attached to Complaint as Ex. 1).  No contingent beneficiary was identified.  (*Id.*, ¶ 9).

On or about July 22, 2008, Song filed a verified complaint in New Jersey Superior Court, seeking a divorce from Ryan Volker.  (Song's Br., Ex. A, ECF No. 20-1; *see also* Song's Answer and Crossclaim[2] ("Song's Crossclaim") ¶ 2, ECF No. 13).  An insurance disclosure attached to the divorce complaint lists the Policy as an asset.  (*Id.* at 20-1 pp. 11 of 21).  On October 1, 2008, the New Jersey Superior Court entered a final judgment of divorce.  (*See* Compl., ¶ 10; *see also* Final Judgment of Divorce, attached to the Complaint as Ex. 2).  The Final Judgment states that "no equitable distribution is sought."  (*Id.*)  There is no mention of the Policy in the Final Judgment.  (Compl., Ex. 2).

Ryan Volker never remarried, and Song and Ryan Volker continued a friendly and cordial relationship following their divorce.  (Song Crossclaim, ¶ 6).  On September 26, 2022, Ryan Volker died intestate in Union County, New Jersey.  (Song Crossclaim ¶ 1).  He was living with Song at the time of his death.  (Song Crossclaim ¶ 8).  Prior to his death, Ryan Volker did not change the beneficiary designation under the Policy.  (Volker Crossclaim, ¶ 6, ECF No. 10).

Ryan Volker was the biological father of Jennifer Volker and Amanda Steele.  (Volker Crossclaim ¶ 2; Song Answer Admitting Crossclaim ¶ 2, ECF No. 13).  Volker is the duly appointed administrator of the Estate.  (Compl., ¶ 3).  Following Decedent's death, Song made a claim for the Policy benefits.  (Compl., ¶¶ 12-13).  Shortly thereafter, Volker, on behalf of the Estate, sought distribution of the Policy proceeds from Banner Life, contending that Song was

---

[2] Because this is a motion for judgment on the pleadings, the allegations of the non-moving party (Song) are deemed to be true for purposes of this motion.  *See Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290–91 (3d Cir.1988).

2

automatically revoked as the beneficiary of the Policy following the divorce by operation of New Jersey's revocation on divorce statute, N.J.S.A. 3B:3-14 (at times, "the statute"). (Compl., ¶¶ 13-17). In response, Banner Life informed Song of the Estate's claim to which Song replied that she entered into an oral contract with her "then-husband," Ryan Volker, to remain as the beneficiary of the Policy in exchange for continuing to pay the Policy premiums, triggering an exception to the statute. (Song's Br. at 1, 3, ECF No. 20; *see also* Song's Crossclaim ¶ 7; Compl., ¶ 19).

Given the competing claims to the Policy proceeds, Banner Life filed the present interpleader action on June 9, 2023, seeking to deposit the proceeds with the Court and be relieved of any potential liability. (ECF No. 1). Banner Life has since deposited the funds with the Court, (ECF No. 4), and "is indifferent to which of the claimants is entitled to the Policy's proceeds." (Compl., ¶ 23).

On August 14, 2023, the Estate answered Banner Life's complaint and filed a crossclaim against Song, seeking a declaration that the Estate is the proper beneficiary. (ECF No. 10). On August 15, 2023, Song answered Banner Life's complaint and filed a crossclaim against the Estate, seeking to declare Song the beneficiary of the Policy. (ECF No. 13). On September 5, 2023, both the Estate and Song filed answers to their competing crossclaims. (ECF Nos. 15-16).

## II.     THE PRESENT MOTION

On October 27, 2023, the Estate filed the present motion for judgment on the pleadings. (ECF No. 19). In support of the motion, the Estate continues to argue that the statute automatically revoked Song as beneficiary under the Policy following the divorce. (Estate's Br. at 8; ECF No. 19-1). According to the Estate, Song was revoked as the beneficiary as a matter of law, and thus, the Policy requires written notice to Banner Life to reinstate Song as the beneficiary. (*Id.*) The Estate contends that no such writing occurred. As such, Song was removed as the beneficiary, and

the Estate is entitled to the Policy proceeds. (*Id.* at 10). Finally, the Estate argues that Song's claim of an oral agreement with Decedent is insufficient as a matter of law to reinstate her as the beneficiary. (*Id.*)

In opposition, Song contends that she was never removed as the beneficiary, and thus no reinstatement is needed. (Song's Br. at 1, 6-9). Rather, Song argues that she had an oral agreement to <u>remain</u> as the beneficiary under the Policy. (*Id.* at 6). In other words, Song argues that the oral agreement she had with Ryan Volker prevented her from ever being removed as the beneficiary, and therefore, there was no need to have her reinstated. (*Id.* at 6, 9). According to Song, a writing would be needed if Ryan Volker sought to *change* the Policy's beneficiary designation. He did not. And so, the oral contract to have her remain a beneficiary is sufficient to defeat automatic revocation under the statute. (*Id.* at 9). Finally, Song contends, even if she was somehow revoked as the beneficiary, she would be entitled to the Policy proceeds and/or to recover her premium payments on various grounds, including unjust enrichment, contract reformation, and an equitable lien. (*Id*. at 12-15).

On reply, the Estate contends that an alleged oral agreement should not be permitted to defeat automatic revocation under the statute. (Estate's Reply Br. at 1, ECF No. 22). The Estate contends that Song's pleading of an oral contract is conclusory, and that allowing an oral agreement to trump the statute would create a situation "rife for abuse." (*Id.* at 3). Finally, the Estate contends that Song cannot seek relief based on theories such as contract reformation or unjust enrichment because they are not pleaded as part of her crossclaim. (*Id.* at 10-11).

**III.    LEGAL STANDARD**

Federal Rule of Civil Procedure 12(c) provides "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P.

4

12(c). "The pleadings are 'closed' after the complaint and answer are filed, along with any reply to additional claims asserted in the answer." *Horizon Healthcare Servs., Inc. v. Allied Nat. Inc.*, 2007 WL 1101435, at *3 (D.N.J. Apr. 10, 2007).

Judgment on the pleadings under Rule 12(c) will not be granted "unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Kruzits v. Okuma Mack Tool, Inc.*, 40 F.3d 52, 54 (3d Cir. 1994) (internal citations and punctuation omitted). In reviewing a Rule 12(c) motion, the Court "must view the facts in the pleadings and the inferences therefrom in the light most favorable to the nonmoving party." *Jablonski*, 863 F.2d at 290–91 (internal quotations and citation omitted); *Hoff Supply Co. v. Allen-Bradley Co., Inc.*, 750 F. Supp. 176, 178 (M.D. Pa. 1990) ("In considering a motion brought under Fed. R. Civ. P. 12(c), all of the well-pleaded factual allegations in the adversary's pleadings are assumed to be true, while all contravening assertions in the movant's pleadings are taken to be false."). A Rule 12(c) motion is reviewed under the same standard as a Rule 12(b)(6) motion. *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010).

Specifically, where a plaintiff brings the motion for judgment on the pleadings, "the question for determination is whether on the undenied facts alleged in the complaint and assuming as true all the material allegations of fact in the answer, the plaintiff is entitled to judgment as a matter of law." *United States v. Blumenthal*, 315 F.2d 351, 352 (3d Cir. 1963). In other words, "the question is whether the facts alleged in the answer are material in the sense that, if proved, they will constitute a legal defense to the plaintiff's claim." *Id*. at 352–53.

**IV.   DISCUSSION**

N.J.S.A. 3B:3-14 is referred to as New Jersey's "revocation on divorce" statute. *In re Estate of Petronaci*, 2024 WL 111281, at *2 (N.J. App. Div. Jan. 10, 2024). That law provides in

relevant part:

> a. Except as provided by the express terms of a governing instrument, a court order, or a contract relating to the division of the marital estate made between the divorced individuals before or after the marriage, divorce or annulment, a divorce or annulment:
>
> (1) revokes any revocable:
>
> (a) dispositions or appointment of property made by a divorced individual to his former spouse in a governing instrument and any disposition or appointment created by law or in a governing instrument to a relative of the divorced individual's former spouse; . . . .

*Id.* The statute applies to life insurance policies and operates to revoke the designation of a spouse as a beneficiary following a divorce, unless the "express terms of a governing instrument, a court order, or contract relating to the division of marital estate" provides otherwise. *Hadfield v. Prudential Ins. Co.*, 408 N.J. Super. 48, 52 (App. Div. 2009).

Here, the parties agree that the statute would operate to revoke Song as the beneficiary of the Policy following her divorce from Ryan Volker, unless the terms of a "contract," made before or after the divorce, provide otherwise. (Song's Br. at 1; Estate's Reply Br. at 1). However, the parties disagree on a question of law—i.e., does a contract contemplated by the statute need to be reduced to writing? If Song is correct that an oral contract is sufficient, then the Estate is not entitled to judgment as a matter of law because Song would still be the beneficiary if she can convince the finder-of-fact that she had an oral contract with Ryan Volker. If, however, an oral contract is not permissible, then Song would have been automatically revoked as the Policy's beneficiary by operation of the statute, and the Estate would be entitled to judgment as a matter of law.

Song relies on *Degelman v. Lincoln National Life Ins. Co.*, 2016 WL 3456920 (D.N.J. June 21, 2016), to support her argument that an oral contract is sufficient to preclude automatic

revocation pursuant to the statute. In contrast, the Estate relies on *Guardian Life Ins. Co. of Am. v. Gonnella*, 806 Fed. Appx. 79 (3d Cir. 2020), to argue that an oral agreement is insufficient to avoid statutory revocation as a matter of law. As is explained below, the Court finds *Degelman* to be on point and persuasive, while *Gonnella* is inapposite.

In *Degelman*, a husband was the owner of a life insurance policy and his then-wife was named as the primary beneficiary. *See id.* at *1. Following a divorce, the wife continued to pay the policy's premiums pursuant to an alleged oral agreement with the husband to remain as the beneficiary. *Id.* at *2. Following the husband's death, the wife sought to collect the policy proceeds, which the insurance company denied, contending that she had been revoked as the primary beneficiary pursuant to N.J.S.A. 3B:3-14. *Id.* The wife filed suit, seeking, among other things, reformation of the policy to name her as the primary beneficiary. *Id.* Relevant here,[3] the *Degelman* court addressed whether an alleged oral contract to remain as the beneficiary was sufficient to avoid automatic revocation under N.J.S.A. 3B:3-14. *Id.* at *5. After noting the absence of relevant case law and legislative history, the court found that the allegation of an oral contract in connection with N.J.S.A. 3B:3-14 was sufficient to withstand a motion to dismiss the wife's claim:

> **There is nothing to suggest that the alleged oral contract between [the wife] and [the husband] is insufficient as a matter of law to trigger the exception to N.J.S.A. 3B:3-14.** First, the limited case law interpreting N.J.S.A. 3B:3-14 does not provide guidance on whether a 'contract' need be in writing for purposes of the N.J.S.A. 3B:3-14 exception, nor could the Court locate any relevant legislative history on the scope of "contract" within N.J.S.A. 3B:3-14. However, it is clear that under New Jersey law, contracts need not be in writing to be valid. Second, even though [the wife] and [the husband] entered into a written Judgment of

---

[3] The *Degelman* opinion also involves certain issues unrelated to this motion, including analysis of negligence claims against insurance agents arising out of the decedent husband's alleged efforts to change the beneficiary designation prior to his death. *Id.* at *3-4, 7. This Court's discussion of *Degelman* is limited to the analysis of whether an oral contract is sufficient under N.J.S.A. 3B:3-14.

7

>Divorce, it is premature to determine whether it was meant to be the exclusive document pertaining to the division of the marital estate. Again, the case law and legislative history do not provide guidance on this point. **Thus, the Court concludes that when construing the complaint in the light most favorable to [the non-moving party], [the wife] has sufficiently demonstrated standing as the primary beneficiary under the policy** . . . .

*Id.* at *5 (citations omitted; emphases added).

The Court continued:

>. . .**[I]n short, if [the wife] is able to convince the fact-finder that she and [the husband] entered into a 'contract' whereby she would remain as primary beneficiary under the policy in exchange for continued payment of the policy premiums, then she can plausibly demonstrate that Lincoln erred in denying her the policy proceeds on grounds that she had been revoked as primary beneficiary under N.J.S.A. 3B:3-14. In other words, under this theory, because [the wife] was never revoked under N.J.S.A. 3B:3-14, Lincoln would reform the contract to name her as the primary beneficiary and pay the proceeds to her**. Given the factual nature of such a claim, the Court finds that [the wife] has sufficiently pleaded this claim to survive the motion to dismiss.

*Id.* at *6 (emphasis added).

This Court agrees. Neither the plain language of the statute nor the legislative history dictate that a "contract" must be in writing to satisfy the exception to the statute's automatic revocation. Indeed, relying on *Degelman,* the Eighth Circuit Court of Appeals, applying New Jersey law, assumed that an oral contract may be sufficient to avoid revocation under N.J.S.A. 3B:3-14. *See Rose v. Midland National Life Ins. Co.*, 954 F.3d 1117, 1119 n.3 (8th Cir. 2020).

This case fits under the rubric of *Degelman*. Here, Song has alleged that she entered into an oral contract to continue to pay the Policy premiums in exchange for remaining the beneficiary of the Policy. (*See* Song Crossclaim ¶ 7). If that allegation is accepted by the finder-of-fact, then Song would not have been revoked as the beneficiary of the Policy by N.J.S.A. 3B:3-14. *See*

8

*Degelman*, 2016 WL 3456920, at *6. While the Estate contends that Song has not sufficiently pled the details of the alleged oral agreement, the Court disagrees. Federal Rules of Civil Procedure 8 and 12 require only that a pleading provide the opposing party fair notice of a plausible claim and the grounds upon which it rests. *See, e.g., Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Song's allegation of an agreement to continue to pay premiums in exchange for remaining the beneficiary are assumed to be true and meet this minimal standard. *See Degelman*, 2016 WL 3456920, at *5 (similar allegations sufficient). Thus, because an oral contract is not prohibited under N.J.S.A. 3B:3-14, and because Song has sufficiently pled the existence of an oral contract, the Estate is not entitled to judgment as a matter of law.[4]

The Estate's reliance on the Third Circuit's unpublished decision in *Guardian Life Ins. Co. of Am. v. Gonnella*, 806 Fed. Appx. 79 (3d Cir. 2020) misses the mark. The Estate argues that *Gonnella* supersedes *Degelman* by holding that an oral contract is insufficient as a matter of law. However, this Court finds that a careful review of both the district court and Third Circuit decisions in *Gonnella* demonstrate that the case is clearly distinguishable.

Turning first to the *Gonnella* district court opinion, there, a policy holder (Arleen) designated her then-husband (Joseph, at times "claimant") as the beneficiary under her life insurance policy in 2010. *Guardian Life Ins. Co. of Am. v. Gonnella*, 2019 WL 13272509, at *1 (D.N.J. Apr. 24, 2019). Two years later, Arleen and Joseph divorced, and in connection with the divorce, entered a written martial separation agreement ("MSA"). *Id*. The MSA specifically addressed Arleen and Joseph's life insurance policies, stating that the policies would remain the

---

[4] Song's opposition brief claims that, even if she was revoked as beneficiary, she would be entitled to recover policy proceeds and/or her premium payments under various additional theories, including unjust enrichment and entitlement to an equitable lien. (ECF No. 20 at 12-15). The Estate opposes these arguments, contending that the only claim asserted by Song is a crossclaim for a declaration of entitlement to the policy proceeds. (ECF No. 22 at 10-12). The Court agrees with the Estate. Song is cautioned that these purported claims and/or theories are not asserted in her crossclaim and thus are not part of this case.

separate property of the individual spouse. *Id.* Further, the MSA specifically stated that it could only be amended in writing. *Id.* at *2. Thereafter, in 2017, Joseph alleged that he and Arleen entered into an oral agreement to keep each other as the primary beneficiary on each's respective life insurance policy. *Id.* In May 2017, Arleen died, and the insurance company was faced with competing claims from Joseph and Arleen's daughter, who was named as the contingent beneficiary on Arleen's policy. *Id.* at *1. On a motion for summary judgment, the district court denied Joseph's claim to the policy proceeds. *Id.* at *3. In so doing, the court noted that Joseph "acknowledges that his designation as beneficiary was revoked by statute upon divorce from the decedent. However, he claims that he was re-designated as beneficiary as a result of the subsequent oral contract with the Decedent." *Id.* at *3 n.4 (citations omitted). The district court rejected the argument, finding that any alleged oral agreement could not overcome the MSA's requirement that any changes to the agreement be made in writing. *Id.* at *3.

On appeal, the Third Circuit affirmed. *See* 806 Fed. Appx. 79 (3d Cir. 2020). The Third Circuit concluded that there was insufficient evidence in the summary judgment record to establish the existence of an oral agreement, but even if there was, an oral agreement could not modify the MSA, which required any changes be made in writing. *Id.* at 82. In addition, the Third Circuit further stated that, because Joseph had been severed as the beneficiary, any attempt to reinstate him as the beneficiary had to be in writing under New Jersey's relevant common law. *Id.* at 82 n.5 (citing *DeCeglia v. Estate of Colletti*, 265 N.J. Super. 128 (App. Div. 1993)).

*Gonnella* is distinguishable from this case for several reasons. First, the decision is a summary judgment decision evaluating the existence of an oral contract on a summary judgment record, not a Rule 12, pleading-based standard, which applies here. *Id.* at 82. Second, the claimant in *Gonnella* contended that the oral contract to remain as a beneficiary was entered into five years

after the divorce and after the execution of a written MSA.  *Id.*  Here, there is no MSA.  Third, the claimant in *Gonnella* acknowledged that he was removed as the beneficiary and argued that the oral contract was sufficient to <u>reinstate</u> him as the primary beneficiary.  *See* 2019 WL 13272509, at *3 n.4.  In contrast, here, Song contends she was <u>never</u> <u>removed</u> as beneficiary, and thus she has not, and need not, seek reinstatement.  Fourth, to the extent the Third Circuit rejected an oral agreement, it was in the context of finding that New Jersey common law required beneficiary designations to be made in writing.  *Id.* at n.5 (citing *DeCeglia*, 265 N.J. Super. at 128).  However, the Third Circuit never held or commented in any way on whether an oral agreement could constitute a "contract" under N.J.S.A. 3B:14-3.  In short, *Gonnella* and *Degelman* are simply not in conflict because they do not address the same issue.  *See Rose*, 954 F.3d at 1119 & n.3 (citing *Gonnella* and *Degelman* for different principles of law).

## V.       CONCLUSION

For the reasons set forth above, the Estate's motion for judgment on the pleadings, (ECF No. 19), is **DENIED**.   An appropriate order will be entered.

The parties are directed to meet-and-confer and submit, **within ten (10) days**, a proposed pretrial scheduling order to govern discovery in this case.

The Clerk of the Court is requested to terminate the motion appearing at ECF No. 19.

                                                    s/Jessica S. Allen
                                                    **Hon. Jessica S. Allen**
                                                    **United States Magistrate Judge**

Dated:  March 26, 2024

cc:  Hon. Claire C. Cecchi, U.S.D.J.